UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

| | |
|---|---|
| BARBARA SCOTT and<br>STANLEY SCOTT<br><br>    Plaintiffs,<br><br>v.<br><br>SREE-LUMBERTON, LLC,<br>SREE-LUMBERTON SPE, INC.,<br>SREE HOTELS, LLC,<br>HOLIDAY HOSPITALITY<br>FRANCHISING, LLC, and<br>INTERCONTINENTAL HOTELS GROUP<br>RESOURCES, INC.,<br><br>    Defendants. | Civ. Action No. 7:16-CV-401<br><br>COMPLAINT<br><br>Jury Trial Demanded |

## INTRODUCTION

1. This is an action based on race, color, and national origin discrimination in the provision of public accommodations at a Holiday Inn hotel located in Lumberton, North Carolina ("Holiday Inn Lumberton").

2. Plaintiffs Barbara Scott and Stanley Scott are Native American, and members of the Lumbee Tribe. They reside in Maxton, North Carolina, near Lumberton.

3. Maxton and Lumberton are located in Robeson County, North Carolina. Robeson County has a high proportion of Native Americans—the largest of any County in the State. People from Robeson County and the surrounding area are easily able to identify Mr. and Mrs. Scott as Native American based on their physical appearance, speech, and other indicators.

4. Late one very hot July 2016 evening, because their home air conditioning had

1

broken down the day before, Mr. and Mrs. Scott attempted to rent a room for the night at the Holiday Inn Lumberton.

5. There were rooms available to rent at the Holiday Inn Lumberton that evening, but Mr. and Mrs. Scott were not allowed to rent one. The hotel's night manager told them that the hotel would not rent to "locals," which he explained meant people from Robeson County.

6. The night manager did not tell Mr. and Mrs. Scott that there were no rooms available, and indeed, he rented rooms to white guests before and after Mr. and Mrs. Scott sought accommodations there. The night manager did not ask these white guests if they were "locals."

7. The context of the night manager's statement that the hotel did not rent to "locals" made clear that Mr. and Mrs. Scott could not rent a room at the Holiday Inn Lumberton because they are Native American.

8. The purported no-locals policy is intended to and does exclude Native Americans, who are overrepresented in the "local" population of Robeson County.

9. Defendants' conduct violated Section 1981 of the 1866 Civil Rights Act U.S.C. § 1981; Title II of the 1964 Civil Rights Act, 42 U.S.C. 2000a *et seq.*; and the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1 (hereinafter "UDTPA"), and constituted the tort of negligence.

10. Plaintiffs have suffered and continue to suffer injury as a direct result of Defendants' unlawful acts, including mental and emotional anguish.

## PARTIES

11. Plaintiff Barbara Scott is a fifty-eight-year-old Native American and a member of the Lumbee Tribe. She resides with her husband, Plaintiff Stanley Scott, in Maxton, North Carolina.

12. Plaintiff Stanley Scott is a fifty-nine-year-old Native American and a member of the Lumbee Tribe. He resides with his wife, Plaintiff Barbara Scott, in Maxton, North Carolina.

13. Defendant Sree-Lumberton, LLC is a limited liability company organized under the laws of North Carolina, with its principal business office located in Charlotte.

14. Defendant Sree-Lumberton SPE, Inc. is a corporation incorporated under the laws of North Carolina, with its principal place of business in Charlotte. Sree-Lumberton SPE, Inc. has a managing membership in and acts as the managing member of Defendant Sree-Lumberton, LLC.

15. Upon information and belief, Sree-Lumberton, LLC and/or Sree-Lumberton SPE, Inc. separately or together own, manage, operate, and do business as Holiday Inn Lumberton, located at 101 Wintergreen Drive, Lumberton, North Carolina 28358.

16. Defendant Sree Hotels, LLC is a limited liability company organized under the laws of North Carolina, with its principal place of business in Charlotte. Sree Hotels, LLC is a hotel development and management company. Upon information and belief, Sree Hotels, LLC is a licensee to a franchise agreement with Defendant Holiday Hospitality Franchising, LLC for the operation of a Holiday Inn hotel, and pursuant to that franchise agreement Sree Hotels, LLC contracts with Sree-Lumberton, LLC and/or Sree-Lumberton SPE, Inc. to operate the Holiday Inn Lumberton.

17. Throughout this Complaint, Defendants Sree-Lumberton, LLC, Sree-Lumberton SPE, Inc., and Sree Hotels, LLC are collectively referred to as "Sree Defendants."

18. Defendant Holiday Hospitality Franchising, LLC is a limited liability company organized under the laws of Delaware, with its principal place of business in Atlanta, Georgia. Holiday Hospitality Franchising, LLC controls a hotel licensing system that includes the hotel

brand Holiday Inn. On information and belief, Holiday Hospitality Franchising, LLC issued a franchise to Defendant Sree Hotels, LLC, Defendant Sree-Lumberton SPE, Inc., and/or Defendant Sree-Lumberton, LLC to operate the Holiday Inn Lumberton.

19. Defendant InterContinental Hotels Group Resources, Inc. is a Delaware corporation with its principal place of business in Georgia. It controls hotel brands, including the Holiday Inn® brand.

20. Throughout this Complaint, Defendants Holiday Hospitality Franchising, LLC and InterContinental Hotels Group Resources, Inc. are collectively referred to as "Holiday Inn Defendants."

21. In connection with these Plaintiffs and the circumstances described herein, Defendants Sree-Lumberton, LLC and Sree-Lumberton SPE, Inc. acted as the actual or apparent agent of Defendants Sree Hotels, LLC, Holiday Hospitality Franchising, LLC, and InterContinental Hotels Group Resources, Inc.

22. In connection with these Plaintiffs and the circumstances described herein, Defendant Sree Hotels, LLC, acted as the actual or apparent agent of Defendants Holiday Hospitality Franchising, LLC, and InterContinental Hotels Group Resources, Inc.

23. Upon information and belief, the Holiday Inn Defendants exercise control over the Sree Defendants with respect to the Sree Defendants' operation and management of the Holiday Inn Lumberton as a condition of the license and franchise agreement.

24. A website maintained by the Holiday Inn Defendants at the web address www.holidayinn.com describes the Holiday Inn Lumberton as "our hotel" on their hotel information page and allows customers to make online reservations for rooms at the Holiday Inn Lumberton.

25. The Sree Defendants own, operate, and manage the Holiday Inn Lumberton using the Holiday Inn® brand with the knowledge and permission of the Holiday Inn Defendants.

26. The Holiday Inn Lumberton bears a roadside sign with a recognizable Holiday Inn logo and exterior design that matches the design of other Holiday Inn branded hotels.

27. There is a prominent plaque displaying "The Kemmon Wilson Holiday Inn Story" inside the Holiday Inn Lumberton. Kemmon Wilson is the founder of the Holiday Inn hotel chain.

28. The Holiday Inn Lumberton honors membership in the IHG® (InterContinental Hotels Group) Rewards Club.

29. The Holiday Inn Defendants allow the Sree Defendants to operate the Holiday Inn Lumberton so as to create the appearance that it is owned and operated by the Holiday Inn Defendants as part of the nationwide Holiday Inn brand. The Holiday Inn Defendants benefit financially and increase their brand recognition from the Sree Defendants' operation of the Holiday Inn Lumberton.

30. Mr. and Mrs. Scott relied on the Holiday Inn Lumberton's appearance as part of a Holiday Inn-brand, national hotel chain in deciding to seek a room there on July 18, 2016, as set forth below.

31. Based on the marketing and appearance of the Holiday Inn Lumberton, Mr. and Mrs. Scott believed that it was owned and occupied or controlled by the Holiday Inn Defendants.

## JURISDICTION

32. The Court has jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. §§ 1331, 1343(a), and 42 U.S.C. § 2000a-6(a).

33. The Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant

5

to 28 U.S.C. § 1367(a) because those claims arise out of the same transactions as Plaintiffs' federal claims such that they are part of the same case or controversy.

34. Venue is proper in this District and Division pursuant to 28 U.S.C. §§ 113(a) and 1391(b)(2) because the events giving rise to the claims in this action occurred in Robeson County, North Carolina.

35. Each Defendant is subject to personal jurisdiction in this Court because each Defendant contributes to the operation of the Holiday Inn Lumberton, located in Robeson County, North Carolina, where the incident giving rise to this action transpired.

## FACTS

36. Plaintiffs Barbara Scott and Stanley Scott have lived in Robeson County, North Carolina, for most of their lives.

37. Mr. Scott is a veteran who retired from the military after twenty-one years of service. He subsequently worked as an assistant vice president of Bladen Community College for seven years before retiring.

38. Mrs. Scott works as a data specialist for a well-known health company.

39. Mr. and Mrs. Scott are Native American. They have physical and speech characteristics that are typical of members of the Lumbee Native American tribe to which they belong.

40. According to the 2010 Census, almost 40% of the population of Robeson County is Native American, compared to less than 2% of the population of North Carolina as a whole.

41. Residents of Robeson County easily recognize Mr. and Mrs. Scott as Native American based on their physical appearance and speech.

42. Robeson County has a long history of tri-racial segregation. Schools, churches,

and other places of public accommodations were historically segregated between white residents, African-American residents, and Native American residents.

43. Growing up in Robeson County, Mr. and Mrs. Scott attended segregated schools and recall being excluded from stores and other places of public accommodation because of they are Native American.

44. Mr. and Mrs. Scott believed that they had left those days of segregation behind them decades ago with the end of Jim Crow. They were therefore stunned when they were subjected to blatant discrimination in 2016, when they tried to rent a hotel room in a major, international hotel chain in Lumberton.

45. On July 17, 2016, the air conditioning in Mr. and Mrs. Scott's home broke down. Unable to have it repaired by the next day, on the evening of July 18, 2016, Mr. Scott and Mrs. Scott decided that they would rent a room in a nearby hotel because of the very hot weather.

46. Mr. and Mrs. Scott first sought to rent a room at a Holiday Inn hotel in Pembroke, but it had no vacancies that evening.

47. Mr. and Mrs. Scott then attempted to rent a room at the Holiday Inn Lumberton, located at 101 Wintergreen Drive in Lumberton. Although there were other lodging options in the immediate area, Mr. and Mrs. Scott chose to seek accommodations at the Holiday Inn Lumberton because of their familiarity with and the reputation of the Holiday Inn brand.

48. Holiday Inn Lumberton is a hotel with more than five beds that offers accommodations to the public.

49. Mr. and Mrs. Scott waited in line while a white male customer finished checking in and then approached the desk to ask if there was a room available for them to rent. The night manager, a white male named Jason Whited, told them that he had a room available but that it

was a handicap accessible room. Mr. and Mrs. Scott responded that they did not mind a handicap accessible room.

50. Mr. Whited asked Mr. and Mrs. Scott if they were locals. Mr. and Mrs. Scott did not immediately understand what Mr. Whited meant. Mrs. Scott said that they were from Maxton, not Lumberton. Mr. Whited responded that it was the "same difference" because they were from Robeson County, and therefore could not rent a room at the Holiday Inn Lumberton.

51. At first, Mr. and Mrs. Scott thought that Mr. Whited was joking. When he continued to insist that he could not rent a room to them because they were "locals," Mr. and Mrs. Scott became incredulous and asked to see the no-locals policy in writing. Mr. Whited said that the policy was not written down.

52. Mr. and Mrs. Scott understood the purported no-locals policy to mean "no Native Americans," because they witnessed Mr. Whited rent rooms to white guests without asking where those white guests were from and without telling them about a no-locals policy. In addition, Mr. White used the term "locals" to mean residents of Robeson County, which has a very high proportion of Native American residents.

53. Mr. and Mrs. Scott concluded that Mr. Whited was discriminating against them because they are Native American, which he recognized based on their physical appearances and speech patterns.

54. Mr. Scott told Mr. Whited that the hotel's no-locals policy was discriminatory and that Mr. Whited was prejudiced. Mr. Whited yelled in response, "I can't believe you're calling me a racist. That's what you guys always say."

55. Mr. and Mrs. Scott then asked Mr. Whited to call the hotel's general manager. Mr. Whited refused to do so and threatened to call the police unless Mr. and Mrs. Scott left the

8

premises. Mr. Scott asked Mr. Whited to call the police because he wanted a report of the discriminatory events that had transpired.

56. While Mr. Scott waited outside in the hotel's parking area for the police to come, Mrs. Scott waited inside. She observed that when another white male customer entered the lobby and inquired about the availability of a room, Mr. Whited did not ask whether he was local or from Robeson County and instead simply rented him a room. Mrs. Scott asked a different, white, male guest if the night manager had asked whether the guest was "a local" and was informed that he had not.

57. Two police officers arrived soon after and separately interviewed Mr. Whited and Mr. and Mrs. Scott. The police officers took no action against either the night manager or Mr. and Mrs. Scott. They advised Mr. and Mrs. Scott to find another hotel for the evening.

58. Mr. Scott asked the officers for a written report of the incident. Because the officers found that Mr. and Mrs. Scott had done nothing wrong, they initially resisted writing a report, but they finally agreed in response to Mr. Scott's repeated requests. The report identifies the cause as a "Disagreement between Customer and Manager." It does not list any violations, citations, or infractions and has no negative statements about Mr. or Mrs. Scott.

59. The Holiday Inn Lumberton is connected to a Denny's restaurant. Customers in the Denny's witnessed the foregoing events, including Mr. and Mrs. Scott's interaction with Mr. Whited and the arrival of the police.

60. Mr. and Mrs. Scott left the Holiday Inn Lumberton and went to a Super 8 Motel located across the street. They were allowed to rent a room at the Super 8 without incident and were not asked if they were "locals."

61. Mr. and Mrs. Smith slept very little that evening because of the stress, anxiety,

9

Case 7:16-cv-00401-D   Document 1   Filed 12/05/16   Page 9 of 16

and humiliation that they suffered as a result of being denied admission to the Holiday Inn Lumberton based on their Native American ancestry, race, and color. They felt embarrassed, degraded, and dehumanized by the way they had been treated.

62. Mr. and Mrs. Scott felt further humiliation knowing that other hotel guests and Denny's customers witnessed the events and likely assumed that Mr. and Mrs. Scott had done something wrong to be denied admission to the hotel.

63. Mr. and Mrs. Scott thought they had put the dark days of segregation in Robeson County behind them long ago. The Holiday Inn Lumberton's blatant refusal to rent them a room was unlike anything that had ever happened to them and left them heartbroken and outraged at being treated like second-class citizens, as compared to white guests.

64. Mrs. Scott struggled to go to work the next morning, after a very poor night's sleep and the continuing stress, anxiety, and humiliation that she and her husband had experienced.

65. Mr. and Mrs. Scott's air conditioning was not fixed by the next evening. That evening, they rented a room at the Holiday Inn hotel in Pembroke, which is also in Robeson County.

66. Pembroke's population has a larger percentage of Native Americans than Lumberton's.

67. Mr. and Mrs. Scott were able to rent a room at the Holiday Inn in Pembroke without incident and without any mention of a no-locals policy.

68. Unlike the Holiday Inn Lumberton, the Holiday Inn hotel in Pembroke is not owned or operated by the Sree Defendants.

69. On the evening of July 18, 2016, after checking into the Super 8, Mrs. Scott called

a toll-free Holiday Inn customer service helpline, upon information and belief operated by one or both Holiday Inn Defendants, to complain about being denied accommodations at the Holiday Inn Lumberton. The customer service representative told Mrs. Scott that the Holiday Inn Lumberton was free to make its own admissions policies and was allowed to exclude them.

70. Mrs. Scott subsequently tried to reach the Holiday Inn Lumberton's general manager, Mr. Arp, to complain about the incident, but Mr. Arp did not answer the phone and never returned Mrs. Scott's multiple voice messages.

71. There is no written policy regarding renting rooms to residents of Robeson County on the website for the Holiday Inn Lumberton, which is maintained by InterContinental Hotels Group at the web address https://www.ihg.com/holidayinn/hotels/us/en/lumberton/lbtno/hoteldetail. The only restriction posted on the website is a minimum check-in age of twenty-one years.

72. A document constituting Terms and Conditions for making a room reservation at the Holiday Inn Lumberton, which is also available through the website listed in the preceding paragraph, lists several hotel booking policies. None of the policies prohibits renting to "locals" or to residents of Robeson County.

73. Defendants have discriminated against Plaintiffs by directing, managing, supervising, applying, and/or condoning the implementation of a no-locals policy at the Holiday Inn Lumberton. This policy is intended and applied in order to deny accommodations to Native Americans.

74. Defendants' no-locals policy furthermore has a clear discriminatory effect on Native Americans, without any legitimate, non-discriminatory reason. The population of Robeson County is disproportionately Native American compared to the surrounding population

11

or the population of North Carolina as a whole. Defendants' policy of denying accommodations at the Holiday Inn Lumberton to residents of Robeson County disproportionately harms Native Americans, without a legitimate, non-discriminatory basis. To the extent that Defendants can demonstrate any legitimate, non-discriminatory basis for the no-locals policy at the Holiday Inn Lumberton, it could be served by other, less restrictive means.

75. Defendants, as the owners, operators, and franchisors of the Holiday Inn Lumberton, owed Plaintiffs, as potential guests, a duty of care.

76. Night manager Whited's conduct of denying accommodations to Mr. and Mrs. Scott was committed in the course of his employment at the Holiday Inn Lumberton and was authorized by the Sree Defendants.

77. Mr. Whited's conduct was ratified by the Sree Defendants and the Holiday Inn Defendants. Despite being notified by Mrs. Scott of Mr. Whited's discriminatory actions, these Defendants refused to take any corrective actions. The general manager of the Holiday Inn Lumberton never returned Mrs. Scott's voice messages requesting an opportunity to speak with him following the incident, and a customer service representative staffing a hotline operated by the Holiday Inn Defendants told Mrs. Scott that the Holiday Inn Lumberton had the right to deny them accommodations.

## INJURY TO PLAINTIFFS

78. As a result of Defendants' unlawful actions described above, Plaintiffs have suffered, continue to suffer, and will in the future suffer irreparable loss and injury, including but not limited to fear, humiliation, embarrassment, emotional distress, and unlawful deprivation of their federally protected rights to use and enjoy public accommodations without regard for their race, color, ancestry, and national origin.

79. Mr. and Mrs. Scott continue to suffer emotional distress from the events at the Holiday Inn Lumberton on July 18, 2016. Mrs. Scott struggles to talk about the incident without crying. Mr. Scott, who was previously diagnosed with PTSD, has suffered from a recurrence of PTSD symptoms since the night of the incident. Among other things, since being denied admission to the Holiday Inn Lumberton he has had nightmares, interrupted sleep, and bouts of anger.

80. Each Defendant's unlawful actions as described above were, and are, intentional and willful, and/or have been and are being implemented with callous and reckless disregard for Plaintiffs' statutorily protected rights.

## NOTICE TO STATE AND LOCAL AUTHORITIES

81. Pursuant to 42 U.S.C. § 2000a-3(c), written notice of the acts and practices alleged herein was given to the North Carolina Human Relations Commission on December 2, 2016.

## CAUSES OF ACTION

### First Cause of Action:
*42 U.S.C. § 1981*

82. Plaintiffs re-allege and incorporate by reference all of the allegations set forth in Paragraphs 1-81 above.

83. Defendants violated 42 U.S.C. § 1981 by refusing to enter into a contract with Plaintiffs for the rental of a hotel room while entering into such contracts with white citizens, because of Plaintiffs' race, color, and Native American ancestry.

### Second Cause of Action:
*42 U.S.C. § 2000a et seq.*

84. Plaintiffs re-allege and incorporate by reference all of the allegations set forth in

13

Paragraphs 1-83 above.

85. 42 U.S.C. § 2000a guarantees the right to full and equal enjoyment of accommodations in hotels, motels, and other lodging facilities.

86. The Holiday Inn Lumberton provides lodging to transient guests and has more than five rooms available for rent and is therefore a place of public accommodation within the meaning of 42 U.S.C. § 2000a.

87. Defendants violated 42 U.S.C. § 2000a-2 by withholding from and denying Plaintiffs' their right to full and equal enjoyment of hotel accommodations because of Plaintiffs' race, color, and national origin.

### Third Cause of Action:
*Unfair and Deceptive Trade Practices, N.C. Gen. Stat. § 75-1.1.*

88. Plaintiffs re-allege and incorporate by reference all of the allegations set forth in Paragraphs 1-87 above.

89. At all times relevant to this action, Defendants have engaged in acts or practices affecting commerce within the meaning of North Carolina General Statute Section 75-1.1.

90. Defendants' discriminatory exclusion of Plaintiffs from the Holiday Inn Lumberton was an unfair, unethical, deceptive, and/or illegal trade practice, in violation of North Carolina General Statute Section 75-1.1.

### Fourth Cause of Action:
*Negligence*

91. Plaintiffs re-allege and incorporate by reference all of the allegations set forth in Paragraphs 1-90 above.

92. Defendants owed Plaintiffs a reasonable duty of care to prevent them from being subject to discriminatory exclusion from the Holiday Inn Lumberton.

93. Defendants breached the duty of care they owed Plaintiffs by failing to prevent Mr. Whited from denying Plaintiffs accommodations at the Holiday Inn Lumberton based on Plaintiffs' race, color, ancestry, and national origin.

94. It was foreseeable that Defendants' negligent acts and omissions resulting in Plaintiffs' discriminatory exclusion from the Holiday Inn Lumberton would cause injury to Plaintiffs.

95. Defendants' negligent conduct has injured and will continue to injure Plaintiffs, as set forth in detail above in Paragraphs 61-64 and 78-79.

## PRAYER FOR RELIEF

96. WHEREFORE, Plaintiffs pray that the Court grant them the following relief:

   a. Enter a declaratory judgment finding that the foregoing actions by Defendants violate 42 U.S.C. §§ 1981 and 2000a-2 and North Carolina General Statute Section 75-1.1 and constitute the tort of negligence;

   b. Enter a permanent injunction directing Defendants and their directors, officers, agents, and employees to take all affirmative steps necessary to remedy the effects of the illegal, discriminatory conduct described herein, and to prevent similar occurrences in the future;

   c. Award compensatory damages on their claims under 42 U.S.C. §§ 1981 and 2000a-2 and their negligence claim in an amount to be determined by the jury that would fully compensate Plaintiffs for the humiliation, embarrassment, and mental and emotional distress caused by the conduct of the Defendants alleged herein;

   d. Award Plaintiffs' actual damages on their claim under North Carolina General Statute Section 75-1.1 for the pain and suffering they have experienced because of

Defendants' conduct alleged herein and treble damages pursuant to Section 75-16;

e. Award Plaintiffs punitive damages for their claims under 42 U.S.C §§ 1981 and 2000a-2 in an amount to be determined by the jury that would punish the Defendants for their willful, wanton, and reckless conduct alleged herein and that would effectively deter the Defendants from engaging in similar conduct in the future;

f. Award Plaintiffs their reasonable attorneys' fees and costs pursuant to 42 U.S.C. §§ 1988 and 2000a-3(b) and North Carolina General Statute Section 75-16; and

g. Order such other relief as this Court deems just and equitable.

## DEMAND FOR JURY TRIAL

97. Plaintiffs request trial by jury as to all issues in this case.

Dated: December 5, 2016

Respectfully submitted,

/s/ Jack Holtzman
Jack Holtzman (N.C. Bar #13548)
Emily Turner (N.C. Bar #49578)
NORTH CAROLINA JUSTICE CENTER
Post Office Box 28068
Raleigh, NC 27611-8068
(919) 856--2165
(919) 856-2175 (facsimile)
jack@ncjustice.org
emilyt@ncjustice.org

Reed N. Colfax*
Jamie L. Crook*
RELMAN, DANE & COLFAX PLLC
1225 19th Street, N.W., Suite 600
Washington, D.C. 20036
(202) 728-1888
(202) 728-0848 (facsimile)
rcolfax@relmanlaw.com
jcrook@relmanlaw.com

*Permission to appear by special appearance to be sought pursuant to Local Civ. R. 83.1(d)*

*Attorneys for Plaintiffs*